No. 55.—JOSEPH A. WHITE and WILLIAM McCARTHY, sheriff, plaintiffs in error, *vs*. ELIZABETH LOWTHER, executrix, and JONATHAN PARISH, executor &c., defendants in error. ·

[1.] A lieutenant of a company raised under the Act of Congress of 11th February, 1847, is not exempt from arrest on civil process, under the Act of 1818, which exempts the militia of this State from arrest, while in actual service.

Rule against sheriff. Heard before Judge FLOYD. In Bibb Superior Court. May Term, 1847.

The defendants in error sued out a *capias ad satisfaciendum* against one Maria Watkins and the said Joseph A. White, upon a judgment recovered in the Court below for the sum of $100 principal, with interest and costs.

There was a return upon the *ca. sa.*, entered by the deputy sheriff, of *non est inventus* as to Maria Watkins, and of the arrest

of White under the *ca. sa.*   The return bore date April the 5th, 1847.

At the said May Term, 1847, of the Court below, the counsel for the defendants in error, who were the plaintiffs in execution, moved a rule against McCarthy, the sheriff, requiring him to return the said *ca. sa.* into court with his actings and doings thereon, and to show cause why he should not pay to said moveants the amount due on said *ca. sa.*

In answer to this rule, McCarthy, the sheriff, showed by his deputy, David J. Davis, that Maria Watkins was not to be found, and that Joseph A. White, the other defendant in *ca. sa.,* and who is one of the plaintiffs in error, was in actual service as First Lieutenant in one of the military companies of the United States, authorized by the Act of Congress of the United States, and which company was required by the Secretary of War from the State of Georgia; and that said White was, and is, a citizen of this State, and one of her militia; that said White was, at the time said *ca. sa.* was placed in his hands, in the service of the United States, and has so remained ever since, and under marching orders.

The said deputy further returned, that being certified of the foregoing facts after he had arrested the said White, he forebore to commit him to jail, leaving him at large in the army barracks, in the city of Macon, to await such decision of the Court below as should be made touching said White's liability to arrest, under the foregoing circumstances; the said White being considered in custody until such judgment should be pronounced in the premises. It was further alleged in the return of the deputy, that he was advised and believed, that he had no authority to commit the said White to close confinement, when thus in actual military service.

Whereupon the Court below decided, that the said Joseph A. White was liable to arrest under civil process, and the rule was made absolute.

To which decision the counsel for the plaintiffs in error excepted, on the ground that said White, being an officer of the militia in actual service, was not liable to said arrest.

The decision of the Court below was assigned for error.

S. T. BAILEY, for the plaintiffs in error.

There were two, and only two, questions to be decided in this cause below.

1. Did the deputy sheriff, by his return, show a sufficient excuse for not committing White to jail?

2. If he did not show a sufficient excuse, still, did he not show by his return, enough to save the sheriff from the penalty of a contempt?

The Court below answered in the negative.

Was White subject to arrest by civil process? We maintain he was not. Our statute provides, "that all equipments and accoutrements of the militia, and their persons, shall be exempt from arrest when in actual service, or on muster." *Hotchk.* 253. The return of the officer must be taken as true, (7 *Com. Dig.* 290, *letter G.*) and no averment shall be admitted against it. *ibid, and cases cited;* 15 *East. R.* 378; 10 *Pick. R.* 169. By a late statute, the return of an officer may be traversed, and if not traversed, it is taken as true. Then it is true, that at and before the time the *ca. sa.* was placed in Davis' hands, and down to the time the return was made, White was a citizen, and one of the militia of Georgia, in actual service of the United States. That being admitted, the statute prohibits his arrest, and the officer was at liberty to notice his privilege, and act upon it.

In *Ray et al.* vs. *Hogeboom*, 11 *Johns. R.* 433, Spencer, Judge, in delivering the opinion of the Supreme Court of New York, said: "The constable was not bound to notice the fact that Traver was protected from arrest, but if he chooses to notice it, or neglects to take a person privileged from arrest, and can show that he is privileged, it is a good defence in an action against him."

But the Court below seemed to think that, taking the return as true, still, White was not privileged from arrest, because if he was in the service of the United States, as the return showed, his case was not within the statute of Georgia; he was not one of her *militia*, and the act of congress only exempted from arrest the rank and file, and not the officers.

The constitution of the United States, Art. 1, sec. 8, seems to take a different view of the subject. It declares: "Congress shall have power to provide for calling forth the *militia*, to execute the laws of the Union, suppress insurrections and repel invasions; to provide for organizing, arming and disciplining the militia, and for governing such part of them as may be employed in the service of the United States; reserving to the States respectively the appointment of the officers, and the authority of training the militia according to the discipline prescribed by congress."

The *service* does not change their character; they are still militia. The Court knows the Roman definition of this Latin term, and Mr. Bouvier, in his Law Dictionary, defines "*Militia*" the military force of the nation, consisting of citizens called forth "to execute the laws of the nation, suppress insurrection, and repel invasion." 2 *Bouv. Dic.* 149. Under the power to repel invasion, the Supreme Court have decided, that the President is the sole judge of the exigency that requires the call for the militia, and mode of repelling the invasion, whether on our own soil, or by pursuit of the enemy into his own country. *Houston* vs. *Moore*, 5 *Wheat, R.* 1; *Martin* vs. *Mott*, 12 *id.* 19.

In the case last cited, Judge Story, in delivering the opinion of the Court, said: "The service is a military service, and the command of a military nature; and in such cases, every delay and every obstacle to an efficient and immediate compliance, necessarily tend to jeopard the public interests." The court also decided in the case of *Martin* vs. *Mott*, that the officer, in pleading or making his defence, need not set forth or show the orders of the government, by virtue of which a militiaman is called into the service.

It is certainly true, that when the militia are called into service by the Federal government, they are no longer State militia, but have become National militia; but this does not take from them the protection of our statute while within the jurisdiction of this State; the term used in the statute, is not the militia of this State, nor State militia, but it is *the militia.*

It seems to me that it would imply a want of patriotism and an enlarged national sentiment in the legislature, to suppose that they intended to confine the statute to the militia in the service of the State, while they left those of other States, nay, their own citizens also, when in the national service, to be incarcerated, away from their friends and home, and that too, while perhaps, they may be repelling the invasion of the State, or suppressing insurrection, and defending our homes and hearths from horrors worse than war.

The act of congress which protects privates from arrests, has nothing to do with this question. That act applies solely to the United States' troops in time of peace, and not to militia; there is a marked distinction between the two arms. The militia are subject to camp duty, only in the three cases specified in the constitution. The troops of the United States, both in peace and

war, make the camp their home. See 1 *Kent Com.* 264. Congress were aware of the great improvidence of private soldiers when quartered, as they often are, in the neighbourhood of large towns; they therefore protect them from the small Shylocks that prey upon them. But they left the great army, on which this Republic must ever lean in time of danger, to the States for protection, or rather they left that army to its own protection, for it mainly constitutes *the States.* But, secondly, if the act of congress had expressly included the militia, this would not have excluded State legislation upon the same subject. It has never yet been doubted that the States may prescribe limits to their own processes.

In the case of *Gregg* vs. *Summers,* 1 *McCord R.* 461, the Constitutional Court of South Carolina decided, that no process whatever could be served on a soldier while on parade, or going to or returning from muster.

The Supreme Court of Alabama, in *Greening* vs. *Sheffield,* 1 *Ala. R.* 276, held the same doctrine.

Colcock, Judge, in delivering the opinion of the court in the first cited case, uses the following language, which commends itself to the feelings of every honourable man.

" The service of a process, even for the recovery of an ordinary debt, is a circumstance calculated to excite unpleasant feelings in the bosom of a man of correct principles, and the more so, if it should occur at a moment when he is performing a public duty in the presence of his fellow-citizens. Suppose a sheriff, (continues the judge,) stepping up to an officer as he was about to give the the word of command to his regiment or brigade, and putting a writ into his hand. Would not this be humiliating to his pride? or even in a more stoical view of the subject, is it not an impediment and hindrance in the discharge of his duty, which he ought not to be subjected to? Or, in the case of a private, at the moment he is about to shoulder his musket in obedience to the command of his officer, to be compelled to receive a writ from a sheriff, would it not both wound his feelings and embarrass him in the discharge of his duty? It is the duty of a wise legislature, in subjecting the citizens of the country to the regulations of the law, to have a due regard to those honourable feelings which should be inculcated in the bosom of freemen; and this was the object of our legislature."

The statute of Alabama, forbids the *arrest* of a soldier going to, continuing at, or returning from a muster. The Supreme Court

held, that it was the intention of the legislature to prohibit the service of any writ, whether bailable or not.

"If, says Crenshaw, Judge, "the statute were of doubtful meaning, it ought to receive the construction most beneficial to the party to whom the law has extended a privilege." *Greening* vs. *Sheffield.*

In the case at bar, we contend there is no doubtful meaning of the statute on which we rely. In our case there is not merely an attempt to disgrace White and wound his feelings, but an effort that will aid the public enemy, by doing for him what he could, as I trust, never effect for himself, by making White a prisoner in a dungeon.

If Judge Colcock asks, "would it not be mortifying to the feelings of an officer to be barely served with a writ by a sheriff at a muster?" I may be permitted to ask, what must be the feelings of an officer, who has given up all the endearments of home at the call of his country, to vindicate the rights of that country on the soil of a barbarian foe more than three thousand miles distant, there to brave death in its worst forms, when he finds that country whose rights he is thus perilling all to vindicate and defend, is commanding and aiding its officer to deprive him of his liberty, by committing him to close confinement for no crime; while he sees the barbarous foes of his country taken in arms against her, turned loose, and sent home to their families, because it would be hard and ungenerous to confine them. His feelings would be the feelings of every honourable man that witnessed such treatment. He would resolve, like Belisarius, that such a country must find other men to defend her.

I will not argue the question, whether the sheriff is liable to have a rule absolute passed against him, provided White was liable to arrest, although the sheriff makes that question in his return. I would not desire to elude, by any by-path of the kind, the great question I have briefly discussed; one of so much importance to the country, and on which I humbly feel the plaintiff in error is firmly based. I want no such poor triumph as, that I got the decision below reversed on the ground that the sheriff acted innocently. If Lieutenant White is to be turned over to the tender mercies of the patriot Shylocks, who stand ready with other *ca. sa's* to feed upon his carcass, I have no wish to deprive the defendants in error of the pound of flesh that they have already carved out.

R. V. HARDEMAN, for the defendants in error, insisted—

That said White was liable to be arrested and imprisoned by said *ca. sa.*, notwithstanding he had been appointed a Lieutenant in the army of the United States, by the President, under an act of Congress. And that all persons against whom a civil process has issued, are liable to be arrested by virtue thereof, unless exempt by the common law, the constitution of the United States, or of the State of Georgia, or by Act of Congress of the United States, or of the General Assembly of this State; and that there is no such exemption as that claimed by Lieut. White provided by any of the aforesaid laws or constitutions.

And submitted the following authorities: 3 *Black. Com.* 224, 326; 1 *U. S. Stat. at large,* 560, 751; 2 *id.* 136, 137, *and the Constitution U. S. and of Georgia.*

*By the Court.*—WARNER, J., delivering the opinion.

The only question presented by the record in this case is, whether Joseph A. White, one of the plaintiffs in error, was liable to be arrested by the sheriff, by virtue of a *capias ad satisfaciendum,* issued against him for the sum of one hundred dollars, in favour of the defendants in error.

It is conceded, that by the laws of the United States he is liable to the arrest, but it is contended that he is not liable to be arrested under the provisions of the 20th section of the Act of 1818, which declares, " All arms, ammunition and equipments, the trooper's horses, and furniture of the militia, shall be exempted from execution and distress at all times; and their persons from arrest and process in civil cases, while going to, continuing at, or returning from muster, and while in actual service." *Prince* 591. It is contended that White, the plaintiff in error, is now in the *actual service of the State of Georgia,* and not in the service of the United States.

The record shows that he was, at the time of the arrest, in actual service, as First Lieutenant of one of the military companies of the United States, authorized by the Act of Congress, and which company was required by the Secretary of War from the State of Georgia; and that he *was in the service of the United States,* and is under marching orders. Taking into view the Act of Congress of 11th February, 1847, under which the plaintiff in error was appointed by the President First Lieutenant of the company, as

well as the provision made for raising the company, and the object for which it was raised, we are clearly of the opinion that the plaintiff in error was in the service of the United States at the time of his arrest, and not in the actual service of the State of Georgia. Indeed, if there was any doubt on the subject, the return of the sheriff, we think, admits it. By the Act of Congress, the troops were raised during the war with Mexico, and at the close of the war, the 5th section provides, that they shall be immediately discharged *from the service of the United States*. By the 29th section of the Act of 1818, the Governor of this State is authorized, in case of an invasion or insurrection, or probable prospect thereof, to call out the militia; or if there should be a sudden insurrection or invasion in any county of this State, the commanding officer of such county may call forth the militia, to repel or suppress it. *Prince* 594; Such, in our judgment, is the *actual service* which the legislature had in contemplation when they exempted the persons of the militia from arrest, by the 20th section of the Act of 1818. That act provides for the mustering the militia, and calling them out to repel invasion and suppress insurrection, and the 20th section exempts their persons from arrest while going to, continuing at, or returning from muster, and while in *actual service ;* that is to say, in the *actual service of the State*, under the orders and authority of the officers of the State, as provided by the Act of 1818.

From the facts disclosed in this case by the record, we do not think that Lieutenant White was in the *actual service of this State*, as contemplated by the Act of 1818, which exempts the persons of her militia from arrest in civil cases ; but was in the service of the United States, under the authority of the Act of Congress to raise an additional military force during the war with Mexico and the United States.

Let the judgment of the Court below be affirmed.